**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SYSCO CORPORATION,<br>USF HOLDING CORP., and<br>US FOODS, INC.<br><br>Defendants. | Civil Action No. 15-cv-00256 (APM) |

## PARTIES' JOINT STATUS REPORT AND RESPECTIVE PROPOSALS FOR CASE MANAGEMENT ORDER

Pursuant to the Court's February 21, 2015 Minute Order, Plaintiffs Federal Trade Commission ("FTC" or "Commission"), the District of Columbia, the States of California, Illinois, Iowa, Maryland, Minnesota, Nebraska, Tennessee and Ohio, and the Commonwealths of Pennsylvania and Virginia (collectively with FTC, "Plaintiffs") have met and conferred with Defendants Sysco Corporation, USF Holding Corp., and US Foods, Inc. (collectively, "Defendants"). The parties have reached agreement on a number of issues, primarily relating to discovery, and respectfully submit their resolution of those matters for the Court's review. Several significant issues remain in dispute, however—most fundamentally, the nature, scope, and length of the discovery period and hearing in this case. Defendants contend these issues are of critical importance and respectfully request the opportunity to appear before the Court and be heard at the Court's earliest convenience. Plaintiffs also request the opportunity to be heard if the Court is inclined to adopt Defendants' proposed schedule.

1

The first part of this joint status report sets forth the parties' positions on the date and length of the hearing, which affects virtually every date on the hearing schedule. The report then addresses another disputed issue that has already been brought to the Court's attention—whether representatives of the Defendants (rather than just Defendants' outside counsel) should receive access to Confidential Material, and if so, how many. Finally, the report contains a joint proposed scheduling order. The matters on which the parties agree are reflected in regular font and the matters on which the parties do not agree are reflected in **bold-face type**. The parties have also attached for the Court's consideration a table comparing the dates proposed by each side.

## I.  <u>The Parties' Positions on the Hearing Date and Length of Hearing</u>

**Plaintiffs' Position:**  The hearing on Plaintiff's Motion for Preliminary Injunction should last no more than three days and begin on or about April 21, 2015, subject to the Court's availability.

Plaintiffs' proposal for the timing of the preliminary injunction hearing is far more consistent with the timing contemplated by this Court's Local Rule 65.1(d), as well as the vast majority of recent FTC Act, §13(b) cases, than the extended process proposed by Defendants. *See, e.g.*, *FTC v Whole Foods Market, Inc.*, 502 F. Supp. 2d 1, 5 (D.D.C. 2007) (60 days from complaint to hearing), *rev'd on other grounds*, 533 F.3d 869 (D.C. Cir. 2008); *FTC v. ProMedica Health Sys., Inc.*, No. 11-cv-47, 2011 U.S. Dist. LEXIS 33434, at *2-*4 (N.D. Ohio Mar. 29, 2011) (34 days from complaint to hearing) (attached hereto as GX1); Scheduling Order, *FTC v. CCC Holdings Inc.*, No. 08-cv-2043 (RMC), Docket No. 28 (D.D.C. Dec. 5, 2008) (40 days from complaint to hearing) (attached as GX2); Order, *FTC v. Phoebe Putney Health Sys. Inc.*, No. 11-cv-58 (WLS), Docket No. 91 (M.D. Ga. June 27, 2011) (hearing held 48 days after

the complaint) (attached hereto as GX3); Stipulated Order Regarding Preliminary Hearing and

Pre-Hearing Schedule and Arrangements, *FTC v. Western Refining Inc.*, No. 07-cv-352

(JB/ACT), Docket No. 83 (D.N.M. April 20, 2007) (25 days from complaint to hearing)

(attached hereto as GX4).

The only Section 13(b) hearings held significantly beyond 60 days were either by

stipulation or because of court scheduling restrictions.  *See* Stipulated Joint Proposed Scheduling

Order, *FTC v. Ardagh Group, S.A.*, No. 13-cv-1021 (RMC), Docket No. 29 (D.D.C. July 19,

2013) (attached as GX5) (FTC agreed—after negotiation with the defendants and due to Judge

Collyer's unavailability—to hold the hearing 100 days after the complaint was filed).

Defendants' citation to two cases brought by the U.S. Department of Justice (*Cinemedia* and

*H&R Block*) is misplaced.  In both those DoJ cases, the court *consolidated* the preliminary

injunction *with the final trial on the merits*, an option unavailable here under the statutory

scheme.

Furthermore, delaying the hearing date for this preliminary proceeding for 90 days and

then having the record close in mid- June (with the Court's ruling to follow thereafter), as

Defendants urge, is unnecessary and inefficient.  It would require the parties to litigate the

Motion for Preliminary Injunction proceeding while simultaneously conducting the extensive

pre-trial proceedings to prepare for the full administrative trial on the merits to begin on July 21,

2015.  *See* FTC Rules of Practice for Adjudicative Proceedings, 16 C.F.R. § 3.21 *et seq*.  On the

schedule the Defendants propose, this Court's ruling on the Motion for Preliminary Injunction

may not even issue until days before the administrative trial begins.

Defendants' assertion that their merger agreement expires on September 8, 2015 and that

the FTC's investigation occurred over fourteen months is no basis to grant the procedure they

propose.  Defendants were free to try to close their transaction as of September 30, 2014, but

<u>voluntarily</u> extended that date repeatedly in an effort to address the Commission's concerns and

avoid the instant suit.  They cannot now cite that delay as a ground for an extended PI

proceeding.  Furthermore, the September 8, 2015 termination date can be extended by mutual

agreement of the parties, and the parties have offered nothing but conclusory statements about

why it would not make sense to do so.  As the Court of Appeals said in *FTC v. H.J. Heinz Co.,*

246 F.3d 708, 726 (D.C. Cir. 2001), "[i]f the merger makes economic sense now, the appellees

have offered no reason why it would not do so later."

Likewise, a PI hearing of three or fewer days of live testimony and oral argument is

consistent with each of ***the last five*** Section 13(b) preliminary injunction cases.  Since 2009,

when the Commission amended its rules to expedite administrative trials in merger cases, *see* 16

CFR § 3.11 (Jan. 13, 2009), no court has held (or planned to hold) a hearing lasting more than

three days.  *See* Stipulated Joint Proposed Scheduling Order, *FTC v. Ardagh Group S.A.*, No. 13-

cv-1021 (RMC), Docket No. 29 (D.D.C. July 19, 2013) (hearing scheduled for 3 days) (attached

hereto as GX5); Order, *FTC v. ProMedica Health Sys., Inc.*, No. 11-cv-47, Docket No. 69 (N.D.

Ohio Jan. 25, 2011) (two-day hearing) (attached as GX6); Order, *FTC v. OSF Healthcare

Sys.*, No. 11-cv-50344 (FJK), Docket No. 115 (N.D. Ill. Dec. 28, 2011) (three-day hearing)

(attached hereto as GX7); *FTC v. Phoebe Putney* (1-day hearing) (attached hereto as GX3);

Order Granting Defendants' Motion for Discovery and an Evidentiary Hearing, *FTC v. Lab.

Corp. of Am.,* No. 10-cv-1873 (AG-MLG), Docket No. 55 (Dec. 16, 2010) (1-day hearing)

(attached hereto as GX8); *see also* Stipulated Joint Proposed Case Management Order, *FTC v

Whole Foods Market, Inc.*, No. 07-cv-1021 (PLF), Docket No. 49 (D.D.C. June 21, 2007)

(approved by minute order date June 21, 2007) (two-day hearing) (attached as GX9).

As in prior §13(b) cases, this Court will have an ample evidentiary record on which to decide the important but focused issue of whether to preserve the status quo, including: (1) expert reports and declarations (including rebuttal reports) describing and analyzing the competitive implications of the merger and Defendants' efficiencies claims; (2) excerpts of sworn testimony from Defendants' executives and third-party witnesses from 15 FTC "investigational hearings"; (3) excerpts of depositions of Defendants and non-parties taken during discovery; (4) sworn declarations from fact witnesses with direct knowledge of the broadline foodservice distribution industry; (5) thousands of pages of documentary exhibits; (6) hundreds of pages of pre-hearing briefs and proposed findings of fact and conclusions of law; and (7) oral argument.

In addition, Defendants' lengthy hearing proposal would require witnesses to testify live in both the PI hearing and the trial on the merits, thereby placing an undue burden on non-parties.

Similarly, Plaintiffs' proposal that fact discovery close on March 27, 2015 is consistent with previous 13(b) preliminary injunction actions, especially those occurring after the Commission's Rules of Practice for Adjudicative Proceedings were amended in 2009 to expedite the administrative trial on the merits. *See FTC v. Ardagh Group* (GX5) (1 month); *FTC v. CCC Holdings* (GX2) (36 days); *FTC v. Whole Foods* (GX9) (1 month); *FTC v. ProMedica* (GX6) (27 days); *FTC v. Lab. Corp.* (GX8) (5 weeks); *FTC v. Western Refining* (GX4) (3 weeks).   A fact discovery close of March 27 also is a substantial departure in Defendants' favor from the procedures contemplated by Local Rule 65.1(d).  Indeed, in each of the three most recent 13(b)

merger challenges filed in this court, the court allowed approximately one month of fact discovery.[1]

Furthermore, contrary to their assertions below, Defendants already have a wealth of information at their disposal, including the materials already produced by Plaintiffs. They have access to all of their own documents, data, and business people; they have access to customers and other third parties with whom they have long-standing relationships and do business with on a daily basis; they attended all FTC investigational hearings of their executives; they already received on February 19 the over 200 exhibits to Plaintiffs' brief; and on February 23, they started receiving, pursuant to Fed. R. Civ. P. 26(a)(1), on a rolling basis all third-party materials gathered during the FTC's investigation, which production should be substantially complete this week. Defendants' assertion that Plaintiffs have identified 550 additional "witnesses" is simply inaccurate and a red herring; those were simply names of individuals who the Commission identified, pursuant to Fed. R. Civ. P. 26(a), as persons potentially with knowledge of the facts relevant to the case. Consequently, there is no justification for prolonged discovery related to Plaintiffs' Motion for Preliminary Injunction.

**Defendants' Position:** An evidentiary hearing should start on May 28, 2015, and last for ten trial days, including opening statements and closing arguments.

Broadly speaking, Plaintiffs seek expedited proceedings in this Court, with limited time for development of the factual record and relevant legal principles and a quick hearing lasting no more than three days, on the theory that the Court should defer to the FTC's administrative inquiry into the legality of the proposed merger. Defendants seek a slightly longer (though expedited) discovery timetable and a ten-day evidentiary hearing, based on the Commission's

---

[1] *See FTC v. Ardagh Group* (GX5); *FTC v. CCC Holdings* (GX2); *FTC v. Whole Foods* (GX9)

fourteen-month head start in investigating this complex transaction, the voluminous and one-sided record the Commission has assembled, the Commission's unwillingness promptly to share information to which Defendants are entitled, and the fact that a hearing in this Court is the only real chance the parties have for judicial review of the Commission's attempt to block the merger. Unconsummated mergers are inherently fragile.  None has *ever* survived the FTC's lengthy administrative process.

Sysco and US Foods notified their merger to the FTC in December 2013.  The FTC has had over a year with process investigating the merger and building its case.  During that time, the FTC has encouraged Defendants to provide voluntary disclosures of confidential information, and took investigational hearings, from which Defendants were excluded.  The FTC has used its subpoena power to request documents from Defendants' customers, competitors, and other market participants, and has obtained 92 ex parte, one-sided declarations, many of which were signed months ago.  And the Commission has also recently identified *over 550 additional individuals* (not including any of the Defendants' employees) in possession of discoverable information.  At the same time, the FTC has delayed in responding to Defendants' requests for information essential to their case.  Immediately after Saturday's status conference, Defendants requested that Plaintiffs disclose basic information centrally undergirding their case, such as the identities of the "National Customers" composing one of the markets alleged by the Commission, the data underlying the expert report submitted along with the Complaint, and Plaintiffs' preliminary witness list.  Earlier today the FTC confirmed it is declining to produce that information.

Under these circumstances, the FTC's proposed sixty-day pretrial period is unreasonable—as is its suggestion that its proposal "is a substantial departure in Defendants'

favor" from the Local Rule 65.1(d) process, which (to Defendants' knowledge) has *never* been applied in the antitrust merger context. The Commission cannot simultaneously inundate Defendants with the product of a thirteen-month investigation, delay in granting Defendants access to critical materials, and then insist that the hearing take place over three days in just two months. The Commission offers no explanation for its rush to deny Defendants an adequate opportunity to take discovery, other than its suggestion that "[t]his case needs to be tried before the Commission," which is meritless for the reasons explained below. The ninety-day pre-hearing period proposed by Defendants is the bare minimum needed to afford Defendants an opportunity to familiarize themselves with the extensive documentary record and prepare rebuttal evidence, and to litigate against the Commission on something resembling a level playing field.

Courts in other merger injunction cases have allowed the defendants at least that much time to prepare their case—and none of those mergers involved as massive a crush of information as the FTC has assembled here. *See*, *e.g.*, Dkt. 34, *United States v. Nat'l Cinemedia, LLC*, No. 1:14-cv-08732-AT-FM (S.D.N.Y. Nov. 21, 2014) ("*Cinemedia* Order") (trial scheduled to begin five months after filing of complaint); Minute Order, *FTC v. Ardagh Grp. S.A.*, No. 1:13-cv-01021-BJR (D.D.C. July 9, 2013) (evidentiary hearing initially scheduled to begin 106 days after FTC's filing of complaint and motion for preliminary injunction); *United States v. H&R Block, Inc.*, 833 F. Supp. 2d 36, 43-44 (D.D.C. Nov. 10, 2011) (trial scheduled to begin over three months after filing of complaint). The Commission purports to provide several counterexamples, but they are largely off point. For example, the Commission emphasizes that the hearing in *FTC v. Whole Foods Market, Inc.* was conducted 60 days after the filing of the complaint, but neglects to mention that the FTC agreed to limit its evidence to a narrow set of 35

deposition and hearing transcripts and *one declaration*.  502 F. Supp. 2d 1, 5 (D.D.C. 2007).

Here, the FTC seeks to introduce at least *92 declarations*, supplemented by testimony or

declarations from some fraction of the *550 other witnesses* they have identified.  Nor would

Defendants' proposed discovery schedule impair the FTC's administrative proceeding—the

parties have agreed that any discovery exchanged in this case can be used in that proceeding as

well.

      The time permitted for discovery is far from the only issue.  The nature and duration of

the hearing is, frankly, of even greater importance.  Defendants respectfully submit that the

Court should set aside ten days for an evidentiary hearing.  That hearing will not prejudice the

FTC in any way.  By contrast, the Defendants *would* be prejudiced by the FTC's near term trial

date and three-day proposed proceeding because it rests in part on the premise that their 92

declarations (and perhaps more from other witnesses) should be admitted without cross-

examination.  *See infra* at __.  This trial-by-many-declarations is patently unfair.  The FTC

should choose which witnesses it needs (not 92 or more, which would obviously be cumulative),

and allow Defendants to cross-examine them.  Defendants will then call their senior executives

to describe the competitiveness of their business and the procompetitive rationale for the merger,

other witnesses to quantify the conservatively estimated $600 million in synergies, and expert

economists to explain the merger's beneficial economic effects.  This live testimony from both

sides' witnesses will assist the Court in deciding this matter, by providing the parties an

opportunity to directly challenge each other's case, and the Court an opportunity to assess the

credibility of the witnesses.

      More importantly, the issue before the Court is not "narrow," as the Commission

suggests.  The Court's preliminary injunction decision effectively will decide the fate of the

proposed merger.  Substantial mergers cannot be held together indefinitely.  They create uncertainty in the marketplace, and obvious issues for key employees, distract management from its ordinary responsibilities, and consume substantial resources.  The FTC suggests that it has "amended its rules to expedite administrative trials," but even under those rules, it takes *years* finally to resolve a merger's validity.  It is therefore imperative that the Defendants receive a fair opportunity fully to present their defense of this proposed merger, as the injunction hearing will likely be their only chance to do so.

The recent *Promedica* proceedings, which addressed an already-consummated merger, underscore the point.  Applying its "expedite[d]" rules, the FTC filed its administrative complaint in January 2011, the ALJ conducted a 30-day hearing and then issued a decision in December 2011 (almost a year later), and the full Commission rendered its decision in March of 2012 (over *two years* after the complaint was filed).  *See ProMedica Health Sys., Inc. v. FTC*, 749 F.3d 559, 563-64 (6th Cir. 2014).  Other proceedings have lasted still longer.  *See*, *e.g.*, *Chicago Bridge & Iron Co. N.V. v. FTC*, 534 F.3d 410, 420-22 (5th Cir. 2008) (Commission proceedings ended over four years after filing of complaint).  The FTC's own authorities likewise confirm the problem—the Commission cites the proceedings in *FTC v. Laboratory Corporation of America* to support its scheduling proposal, but neglects to mention that the court in that case denied a preliminary injunction based in part on the "glacial pace of an FTC administrative proceeding," and the likelihood that an injunction would "spell the doom of an agreed merger."  2011 U.S. Dist. LEXIS 20354, at *58 (C.D. Cal. Feb. 22, 2011) (quotations omitted).

No unconsummated merger can survive such protracted proceedings.  Indeed, while the Commission suggests that its administrative process will "expeditiously" resolve the merger's

validity and protect Defendants' interests, Mem. 4, it neglects to mention that *no unconsummated merger has ever survived the delays inherent in FTC proceedings*. Not once, not ever. Accordingly, when a district court preliminarily enjoins an unconsummated merger pending those proceedings, the deal can be expected to die. So it is here: the parties have already exhausted the extensions included in the merger agreement in order to comply with the FTC's fourteen-month investigation, and the agreement will terminate on September 8, 2015. The FTC's administrative trial is slated to begin just over a month earlier, on July 21, 2015, and as just explained, there is no chance it will conclude in time for the merger to proceed. To enjoin the merger pending those proceedings is to enjoin the merger full stop.

Because the injunction hearing presents the only real opportunity for the defendants to subject the government's case to adversarial testing, and because live testimony is of significant value to the Court, judges, including judges in this district, routinely conduct evidentiary hearings lasting far more than three days. *See*, *e.g.*, *Cinemedia* Order (two to three weeks); *H&R Block*, 833 F. Supp. 2d at 44 (nine days); *FTC v. CCC Holdings, Inc.*, 605 F. Supp. 2d 26, 31 (D.D.C. 2009) (eight days); *FTC v. Arch Coal Inc.*, 329 F. Supp. 2d 109, 114 (D.D.C. 2004) (ten days); *FTC v. Cardinal Health, Inc.*, 12 F. Supp. 2d 34, 44 (D.D.C. 1998) (seven weeks).

The Court should adhere to that sensible practice here and order a ten-day hearing. As in the foregoing precedents, a ten-day hearing would not prejudice the Commission or unduly delay the resolution of the merger. It would instead provide the parties a meaningful opportunity to present their positions on the many critical factual disputes in this case. By contrast, the FTC's position is inconsistent with extant precedent, which makes clear that a court may not "simply rubber-stamp" the FTC's request for an injunction "whenever the FTC provides some threshold evidence." *FTC* v. *Whole Foods Mkt., Inc.*, 548 F.3d 1028, 1035 (D.C. Cir. 2008) (opinion of

Brown, J.); *see also FTC* v. *CCC Holdings Inc.*, 605 F. Supp. 2d 26, 36 (D.D.C. 2009) (same).

Rather, a court "must exercise independent judgment about the questions [§ 13(b)] commits to

it." *Whole Foods*, 548 F.3d at 1035 (internal quotation marks omitted).  A meaningful ten-day

hearing will ensure the Court can properly exercise such judgment.

## II.     <u>Modification of the Protective Order</u>

**Plaintiffs' Position:**  Plaintiffs urge the Court to keep the names of third-party declarants

and their companies under seal, and not modify the protective order to permit Defendants'

internal lawyers to access this information and unredacted copies of declarations (and other

materials).  Maintaining these materials under seal and preventing Defendants' internal lawyers

from accessing them is necessary to protect third parties from retaliation and protect their

confidential business information.

Most declarants here are Defendants' customers, many of which are small local

independent restaurants.  Regardless of their size, many declarants fear retaliation if Defendants'

businesspeople discover their participation in the Commission's investigation.  The remaining

declarants primarily consist of other broadline foodservice distributors.  Both customers' and

distributors' declarations include non-public competitively sensitive information, such as non-

public revenues, sensitive pricing information, information and strategies about contract

negotiations or business practices, and specific contract terms.

These customers and distributors participated in the FTC's non-public investigation and

provided such confidential competitively sensitive information pursuant to the Commission's

confidentiality rules, which provide that information obtained by the Commission during its

investigation will be treated in confidence and exempt from disclosure under the Freedom of

Information Act, 5 U.S.C. § 552.  15 U.S.C. § 18a(h); 15 U.S.C. § 57b 2(f).  *See also* 16 C.F.R.

§§ 4.10, 4.11.  In fact, the declarants specifically requested that their identities, their companies'

identities, and the contents of their declarations be kept confidential and be exempt from public

disclosure.  Releasing declarants' names, company names, and confidential business information

to Defendants' internal lawyers or publicly puts these non-parties at risk of retribution and

discloses sensitive—and often competitively sensitive—business information.  Doing so could

result in a chilling effect on the ability of the Commission to obtain highly relevant, reliable, and

probative evidence from customers and other market participants in this and future cases.

       Moreover, the protective order issued by the administrative law judge in this case, like

the protective order here, prevents disclosure of confidential third-party information to anyone

other than the excepted group.  If the Court permits disclosure of third-party material to

Defendants' internal lawyers or to the public, then it will have effectively amended the protective

order issued by the administrative law judge.  Any modifications of these two protective orders

should be consistent.

       Further, Defendants have not provided any information about whether the attorneys have

non-legal business responsibilities for Defendants.  Based on publicly available information, it

appears that at least two of those attorneys do indeed have non-legal business responsibilities.

For example, the public profile of Sysco's Executive Vice President-Corporate Affairs and Chief

Legal Officer indicates that one of his responsibilities is "Business Development."[2]  Similarly,

the LinkedIn profile of one of the US Foods' Assistant General Counsel states that he "[w]ork[s]

regularly with senior leadership team" and has "[t]ransaction work experience [that] includes

---

[2] Sysco Profile of Russell Libby, *available at* www.sysco.com/about-sysco/our-
management.html (last visited February 25, 2015).

partnership with . . . [the] Procurement[ ] and Operations departments."[3]  It may be the case that all seven attorneys proposed by Defendants have non-legal business responsibilities, in which case it is additionally important to preclude them from gaining access to the identities, company names, and confidential information of the declarants.

Many courts in this District have recognized the importance of protecting from disclosure the individual and business names of third parties that participate in the Commission's non-public investigations.  For example, the Protective Order in *CCC* contained a default provision that the materials and identities of third parties that participated in the Commission's investigation were confidential. Protective Order at 3-7, *FTC v. CCC Holdings, Inc.*, No-08-2043 (RMC), Docket No. 30 (D.D.C. Dec. 9, 2008) ["*CCC Protective Order*"].  Similarly, in *Ardagh*, the Protective Order stated that "[t]he identity of a third party submitting [ ] confidential information shall [ ] be treated as confidential material for the purposes of this Order where the submitter has requested such confidential treatment." Protective Order at 2, *FTC v. Ardagh Group S.A.*, No. 13-cv-1021 (BJR), Docket No. 9 (D.D.C. July 9, 2013) ["*Ardagh Protective Order*"].  *See also* Protective Order at 2, *FTC v. Staples, Inc.*, No. 97-701 (PLF) (Apr. 16, 1997) ["*Staples Protective Order*"].  The *Ardagh* Protective Order did not allow for the disclosure of confidential information, including the identities of third parties that submitted information during the Commission's investigation, to in-house counsel for the defendants in that case.[4]

---

[3] LinkedIn Profile of Luis Avila, *available at* https://www.linkedin.com/pub/luis-avila/4/8b6/27a?trk=biz_employee_pub (last visited Feb. 25, 2015).

[4] *Ardagh Protective Order* at 3-4.  *See also CCC Protective Order* at 4 (permitting disclosure of third party identities to "a defendant" only after giving the Commission and the affected third parties the right to challenge that disclosure in court); *accord Staples Protective Order* at 2. Even in *Whole Foods*, where the in-house attorney for Whole Foods gained access to certain confidential information, the Protective Order did not permit Whole Foods' in-house attorney to access the confidential exhibits accompanying the unredacted pleadings, deposition and hearing transcripts, and expert reports to which she had access.  Protective Order Governing Discovery

Given the concerns of third parties, the Commission respectfully requests that the Court prohibit disclosure of the declarants' identities, business names, and confidential business information to both the public and to Defendants' internal lawyers.  In lieu of such a modification to the protective order, the Commission is willing to provide versions of the declarations at issue here that are redacted to remove any information identifying the declarant, his/her business, and any confidential business information.  Under this approach, Defendants' internal lawyers would have access to the substantive information contained in the declarations and outside counsel for Defendants would have access to the declarants' identities.  Thus, this result would not prejudice Defendants' litigation strategy, would protect the declarants (and future declarants) from any real or perceived retaliation, and protect declarants' confidential business information, thereby preserving the Commission's ability to conduct merger investigations.  This proposal also would require redaction of any identifying information of the individual and business names of the declarants, as well as any confidential business information, from any publicly filed documents.

In the event that the Court is inclined to unredact third-party information, it is common practice in this District to allow the affected third parties the opportunity to petition the court for greater protection.  In *Ardagh*, *CCC*, *Whole Foods*, *Cardinal Health*, and *Staples*, the respective protective orders placed the burden of notice on the party seeking disclosure while also giving the relevant third party an opportunity to block the sought disclosure.  *Ardagh Protective Order* at 4-6; *CCC Protective Order* at 5-7; *Whole Foods Protective Order* at 6-12; Protective Order at 3-5, *FTC v. Cardinal Health, Inc.*, No. 98-595 (SS) (D.D.C., Mar. 11, 1998); *Staples Protective Order* at 2-6.  *See also* Protective Order at 2-7, *FTC v. OFS Healthcare System*, No. 11-cv-50344

---

Material, *FTC v. Whole Foods Market, Inc.* at 8, No. 07-cv-1021 (PLF), Docket No. 100 (D.D.C. July 10, 2007) ["*Whole Foods Protective Order*"].

(N.D. Ill. Dec. 28, 2011); Stipulated Protective Order at 3-5, *FTC v. Phoebe Putney Health System, Inc.*, No. 1:11-cv-58 (WLS) (M.D. Ga. Apr. 26, 2011).  For example, in *Whole Foods*, a litigating party seeking to publicly disclose third-party information had the right to challenge a confidentiality designation by giving notice to the relevant third party, which third party then had the ability to protect its confidential information in good-faith negotiations and, if necessary, before the court.  *Whole Foods Protective Order* at 6-7.  The Protective Order in *Ardagh* required a litigating party seeking to introduce third-party confidential information into evidence to notify the third party, which then had the opportunity to request *in camera* treatment of the evidence at issue.  *Ardagh Protective Order* at 5. In *CCC*, where the identities of third parties that participated in the Commission's investigation were confidential, the Protective Order required defendants' counsel to notify the Commission if defendants' counsel intended to disclose any information submitted to the Commission during its investigation, including information that did not qualify as "confidential material."  *CCC Protective Order* at 6-7.  The Commission would then notify the third party that had originally produced the information, which could waive confidentiality or make a written objection to the release of its information within five days of receiving notification.  *Id.*

In sum, we respectfully urge the Court not to modify the protective order.  Plaintiffs instead propose to provide redacted versions of third-party declarations and exhibits to Defendants' internal lawyers.  If the Court is otherwise inclined, we respectfully request that the Court implement a process whereby third parties can petition to maintain the confidentiality of their identities and business information.

**Defendants' Position**:  The protective order should be modified to grant access to Confidential Material to three members of each Defendant's in-house legal team.  For Sysco,

those individuals are:  Russell Libby, Chief Legal Officer and Executive Vice President of

Corporate Affairs; Carmen Ng, a Vice President for Transactions who is assuming the litigation

oversight responsibilities of the VP Employment & Litigation while that person is on maternity

leave; and Barrett Flynn, a Counsel in the Litigation Department.  For US Foods, the three

individuals are:  Juliette Pryor, General Counsel and Chief Compliance Officer; Dorothy Capers,

Associate General Counsel; and Andrew Nelson, Assistant General Counsel.  Luis Avila,

Assistant General Counsel, will replace Andrew Nelson when Mr. Nelson leaves his employment

with US Foods, Inc.   A copy of the proposed Protective Order with revisions shown in redline is

attached as Exhibit DX1.

Plaintiffs required Defendants to sign the existing Protective Order as a precondition of

providing Defendants access to the pleadings.  But the Order severely impairs Defendants'

ability to prepare their case.  The Order grants Defendants' outside law firms access to

Confidential Material, but prohibits Defendants themselves from reviewing the same materials.

Making matters worse, the Order sets forth a broad and malleable definition of Confidential

Material.  To name just one example, Plaintiffs claim that the exhibit list submitted with their

motion is Confidential—meaning that Defendants cannot learn the names or corporate employers

of the various individuals who provided ex parte declarations supporting the FTC's pleadings.

The Commission's position does not comport with applicable law.  Courts routinely grant

parties access to confidential material to enable them effectively to participate in their defense.

*See*, *e.g.*, *Williams v. Shockley*, 2013 WL 3816086, at *4 (D. Del. July 19, 2013) ("[D]efendants

are entitled to have access to all filings by the plaintiffs."); *Emily Q. v. Bonta*, 2001 WL

1902812, at * 1 (C.D. Cal. Mar. 30, 2001) (order granting access to "defendants, defendants'

counsel and the employees and agents of any of them").  Access to confidential information is

especially critical where, as here, the case is proceeding on an expedited basis and the

Defendants have "a degree of knowledge and experience in the . . . industry which makes them

indispensable to counsel." *In re Se. Milk Antitrust Litig.*, 2009 WL 3713119, at *2 (E.D. Tenn.

Nov. 3, 2009). Further, the FTC has not shown and cannot show that this narrowly-tailored

group of in-house lawyers will exploit or otherwise attempt to use Confidential Material for

competitive gain. *See Trading Technologies, Int'l. Inc. v. BCG Partners, Inc.*, 2011 WL

1547769, at *2-3, *7 (N.D. Ill. Apr. 22, 2011) (granting in-house attorneys "intimately involved

in [the company's] overall litigation strategy" access to confidential materials where there was

no reason to suspect misuse).

      Moreover, the names of the FTC's witnesses are not Confidential Material, yet the FTC is

withholding that information from all employees of Sysco and US Foods. The FTC generally

identifies in their public filings the witnesses opposing the transaction. *See e.g. FTC v. CCC*

*Holdings Inc.*, No. 1:08-cv-02043, Dkt. 600-1 (D.D.C. 2009) (declarants identified in FTC

exhibit list); *FTC v. Arch Coal*, No. 1:04-cv-00534, Dkt. 77 (D.D.C. 2004) (same); FTC v. OSF

Healthcare System, No. 3:11-cv-50344, Dkt. 1-1 (N.D. Ill. 2011) (same); St. Luke's Health

System, Ltd, and Saltzer Medical Group, P.A., No. 1:12-cv-00560, Dkt. 247 (D. Idaho 2013)

(same). Courts in this District similarly identify in their public opinions witnesses who have

given testimony for and against the transaction. *See e.g. FTC v. Staples Inc.*, 970 F. Supp. 1066,

1077 (D.D.C 1997) (Hogan, J.); *FTC v. Libbey, Inc*. 211 F. Supp.2d 34, 48 (D.D.C. 2002)

(Walton, J.); *FTC v. Arch Coal*, 329 F. Supp. 2d 109, 121 (D.D.C. 2004) (Bates, J.). Courts

refuse to restrict access to witness lists absent a specialized showing that the list is competitively

sensitive business information. *See e.g. Bryant v. Mattel, Inc.*, No. 04-cv-09049, 2007 WL

5416684, at *3-*5 (C.D. Cal. Feb. 6, 2007) (striking "Attorneys' Eyes Only" designation of

witness list).  Indeed, the FTC's own administrative hearing requires that court to keep

information confidential "only after finding that its public disclosure will likely result in a clearly

defined, serious injury to the person, partnership, or corporation requesting in camera treatment

or after finding that the material constitutes sensitive personal information" such as an

individual's social security number.  FTC Rule 3.45, 16 CFR 3.45.  Ample precedent, as well as

basic due process principles, thus compel granting Defendants' selected in-house lawyers access

to Confidential Material.

## III.   Joint Proposed Scheduling Order

A.     TEMPORARY RESTRAINING ORDER:  The parties have agreed on a form of

Temporary Restraining Order which was filed with the Court on February 24, 2015.

B.     DISCOVERY

1.  Fact Discovery.  The parties may commence issuing discovery immediately .  **Fact**

**discovery shall be completed by _____, 2015.**

**Plaintiffs' Position:**

**The close of fact discovery should be March 27, 2015.**

**Defendants' Position:**

**The close of fact discovery should be April 29, 2015.**

2.  Initial Disclosures.  The parties already have served each other with lists of people with

knowledge and a significant number of documents required by Fed. R. Civ. P. 26(a)(1),

and will supplement those disclosures promptly.  Further, as soon as practicable,

[**Defendants' Position:  but no later than February 27, 2015**], the Commission shall

produce to Defendants a copy of all documents in its investigative file regarding Sysco

Corp.'s anticipated acquisition of USF Holding Corp. and US Foods, Inc. (the "Proposed

Transaction"), that are not privileged or otherwise protected by the work-product doctrine ("non-privileged"), including all non-privileged electronic, written, and contemporaneous notes or transcriptions of oral, communications with, and documents received, whether written or read telephonically from, non-parties, as well as any other non-privileged materials that the Commission has collected or prepared in connection with the investigation of the Proposed Transaction, or its decision to file either the complaint in the above-captioned action or the administrative complaint filed with the Federal Trade Commission Office of Administrative Law Judges on February 19, 2015, captioned In the Matter of Sysco Corp. et al. (the "Administrative Action").[5]

3. <u>Pre-Trial Discovery Conference.</u>  The parties' prior consultations and submission of this stipulated Order relieve the parties of their duty under Fed. R. Civ. P. 26(f) to confer about scheduling and a discovery plan.

4. <u>Third-Party Discovery.</u>  For any third-party subpoena, the parties will not request a return date sooner than seven calendar days after service.  The parties agree to produce all materials received pursuant to a third-party subpoena to the non-serving Party in the format the materials were received within 24 hours of knowing receipt.

5. <u>Document Production.</u>  The parties shall not be required to produce to each other in discovery in this case any documents previously produced by Defendants to Plaintiff FTC in the course of the investigation of the acquisition of USF Holding Corp. by Sysco Corporation, FTC File No. 141-0067.

---

[5] The Commission is not required to produce to Defendants any documents or other material originally produced by a Defendant in connection with the Commission's [INSERT DATE] Request for Additional Information and Documentary Materials pursuant to the Hart-Scott-Rodino Antitrust Improvements Act (the "Second Request").

6.  <u>Expert Materials Not Subject to Discovery.</u>  Expert disclosures and reports shall

comply with Fed. R. Civ. P. 26(a)(2), except neither side must preserve or disclose:

    a)    any form of communication or work product shared between any of the

        Parties' counsel and their expert(s), or between any of the experts

        themselves;

    b)    any form of communication or work product shared between an expert(s)

        and persons assisting the expert(s);

    c)    expert's notes; unless they reflect facts or assumptions relied upon by the

        expert in arriving at the opinions contained in the final expert report;

    d)    drafts of expert reports, analyses, or other work product; or

    e)    data formulations, data runs, data analyses, or any database-related

        operations not relied upon by the expert in the opinions contained in his or

        her final report.

The Parties shall disclose the following materials with all expert reports:

    a)    all documents relied on by the testifying expert(s) by Bates number; and

        (except for those excluded above) copies of any materials relied on by the

        testifying expert(s) that were not previously produced and are not readily

        available through public sources; and

    b)    all data and programs underlying the expert's calculations for any

        calculation appearing in an expert report, including all programs and codes

        necessary to recreate the calculation from the initial ("raw") data files, and

        any intermediate files.

7. <u>Requests for Admission and Exhibits.</u>  The parties shall be limited to [**Plaintiffs' position ten; Defendants' Position five**] requests for admission per side, subject to the following provisions:

    a)    There will be no limit on the number of requests for admission for the authenticity of documents or admissibility of evidence.  Requests for Admission related to the authenticity of a document shall not count against the limit of [**ten or five**] Requests for Admission.

    b)    Any good faith objection to a document's status as a business record must be provided at the same time as other objections to intended trial exhibits.  If the opposing side serves a specific good faith written objection to the document's status as a business record, the parties will promptly meet and confer to attempt to resolve any objection.  If the objection is not resolved, the party seeking to introduce the exhibit shall have the opportunity to take discovery regarding the exhibit(s) in question.  Any objections not resolved through this means or the discovery process will be resolved by the Court.

8. <u>Interrogatories.</u>  Each side shall be permitted to serve the other with up to [**Plaintiffs' position: 20; Defendants' Position: five**] interrogatories seeking only factual information (i.e., no contention interrogatories).  The parties shall serve interrogatories by [_____, 2015].  The parties shall serve responses to the interrogatories no later than thirty days after the date of service.

9. <u>Service of Objections to Written Discovery</u>.  The parties shall serve any objections to written discovery requests within ten days of service of the discovery requests to which objections are asserted.

10. <u>Exchange of Lists of Fact Witnesses to Appear at Hearing</u>.  **[Plaintiffs' Propose a simultaneous exchange of witness lists: The parties shall exchange preliminary party and third-party fact witness lists no later than March 3, 2015]** **[Defendants' Propose Plaintiffs serve their list first as they have the burden of proof:  Plaintiffs shall provide Defendants with their preliminary party and third-party fact witness list by March 3, and Defendants shall provide Plaintiffs with their preliminary party and third-party witness list by March 13, 2015 Plaintiffs further propose that if the exchange is not simultaneous, Defendants should serve their preliminary witness list by March 9]**.  Such preliminary party and non-party fact witness lists shall include a summary of the topics of each witness's testimony.  The preliminary witness list shall include the name of the employer of each witness.  The parties will update their preliminary lists promptly as they add or delete witnesses.  Final party and non-party fact witness lists shall be exchanged on or before April 10, 2015, with a summary of the topics of each witness's testimony.  Additional witnesses may be added to the final witness list after this date only by agreement of the parties or with leave of the Court for good cause shown.

11. <u>Depositions</u>.

   a)      The parties agree there should be no limit on the number of depositions that each party will be permitted.  The parties shall consult with each other

prior to confirming any deposition to coordinate the time and place of the

deposition.  The Parties may not serve a deposition notice with fewer than

seven days' notice.  The parties shall use reasonable efforts to reduce the

burden on witnesses noticed for depositions and to accommodate the

witness's schedule.

b)      All depositions shall be limited to a maximum of seven (7) hours.

c)  For any deposition noticed by both Plaintiffs and Defendants, the maximum time

for the deposition shall be allocated evenly between the two sides.  For any

noticed deposition for which either side has obtained a declaration from the

deponent, the maximum time shall be allocated for five (5) hours for the party that

did not obtain the declaration, and two (2) hours for the party that obtained the

declaration.  For any noticed deposition of Performance Food Group or its

employees, Plaintiffs shall be allocated **[Plaintiffs' Position: six (6);**

**Defendant's Position: five (5)]** hours and Defendants **[Plaintiffs' Position: one**

**(1); Defendant's Position: two (2)]** hours.  **[Plaintiffs' Position The**

**Commission does not believe that it should be barred from deposing**

**witnesses appearing on either side's witness list based solely on whether or**

**not those witnesses were questioned by the Commission in an investigational**

**hearing.  The investigational hearings were taken months ago by the**

**Commission Staff to understand the Acquisition, the Defendants' businesses,**

**the markets in which they compete, and the harm that might arise if the**

**Acquisition were permitted to close.  Investigational hearings are taken to**

**permit the Commission to determine whether or not it has reason to believe**

it should challenge an acquisition and are not intended to replace depositions. Indeed, the Commission's rules (applicable to the parallel administrative proceeding) explicitly provide: "The fact that a witness testifies at an investigational hearing does not preclude the deposition of that witness." FTC Rules of Practice for Administrative Proceeding, 16 C.F.R. § 3.33(b). Certainly no arbitrary limit should be established before the Parties exchange their proposed witness lists. Therefore, the Commission would be prejudiced if it is limited in its ability to take discovery of party witnesses and particularly if that limit were established before the Parties even exchange their preliminary witness lists: For any party deponent who has previously been deposed in an investigational hearing in the Federal Trade Commission's investigation of investigation of the acquisition of USF Holding Corp. by Sysco Corporation, FTC File No. 141-0067, the deposition shall be limited to a maximum time of 3.5 hours; provided, that, Plaintiffs shall be entitled to designate a maximum of four (4) depositions of deponents who have previously been deposed in an investigational hearing for which the deposition shall have a maximum time of 7 hours; provided, further that, the CEOs of Sysco and US Foods shall not be among these four.

Defendant's Position: The FTC shall not re-depose party witnesses whose investigational hearings were already taken by the FTC in its investigation of the acquisition of USF Holding Corp. by Sysco Corporation, FTC File No. 141-0067.  Unused time in any party's allocation of deposition time shall not transfer to the other party.

d)      If a Party serves a non-party subpoena for the production of documents or electronically stored information and a subpoena commanding attendance at a deposition, the deposition date must be at least seven days after the original return date for the document subpoena.

12. Expert Reports. [6]  **[Plaintiffs' Propose a simultaneous exchange of expert witness reports: The parties shall serve thier expert report(s) no later than March 18, 2015; rebuttal reports, if any, shall be served by March 27, 2015.  Defendants' Propose Plaintiffs serve their expert reports first as they have the burden of proof:  Plaintiffs filed opening expert reports on February 18, 2015.  Plaintiffs shall supplement those reports as necessary on or before April 8, 2015; Defendants will serve their expert report(s) on or before April 29, 2015.  The Commission will serve its rebuttal expert report(s), if any, on or before May 8, 2015.]**

13. Expert Depositions.  Depositions of each side's experts may only be conducted after the disclosure of each expert's report.  Expert depositions must be completed on or before **[Defendants' Proposal: May 15, 2015] [Plaintiffs' Proposal April 3, 2015]**.

14. Discovery Uses.  All discovery taken in the above-captioned litigation can be used in connection with the Administrative Action and vice versa.

15. Notwithstanding any other provision herein, the Parties may modify deadlines in paragraphs 1-14 in this Order by agreement.

---

[6]  At the time of service of the expert reports, a Party shall provide opposing counsel (i) a list of all commercially-available computer programs used by the expert in the preparation of the report; (ii) a copy of all data sets used by the expert, in native file format and processed data file format; and (iii) all customized computer programs used by the expert in the preparation of the report or necessary to replicate the findings on which the expert report is based.

C.   BRIEFING SCHEDULE

16. **Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction shall be filed by _____, 2015.  The Plaintiffs' Reply Brief shall be filed by _____, 2015.**

**Plaintiffs' Position:**

**Defendants' Memorandum in Opposition should be filed by March 20, 2015, and Plaintiffs' Reply Brief should be filed by April 4, 2015.**

**Defendants' Position:**

**Defendants' Memorandum in Opposition should be filed by May 11, 2015, and Plaintiffs' Reply Brief should be filed by May 18, 2015.**

D.   DATE AND LENGTH OF PRELIMINARY INJUNCTION HEARING

17. **Subject to further direction of the Court, the hearing on Plaintiffs' Motion for Preliminary Injunction will be held over __ days beginning on _____, 2015.**

**Plaintiffs' Position:**

**The hearing should be no more than three (3) days in duration beginning on or about April 21, 2015, subject to the Court's availability.**

**Defendants' Position:**

**The hearing should be ten (10) days in duration beginning on or about May 28, 2015, subject to the Court's availability.**

E.   OTHER MATTERS

18. Use of Declarations.

27

**Plaintiffs' Position:**   Plaintiffs disagree with Defendants' attempt to preclude the Court from considering sworn declarations of customers, distributors, and other participants in the broadline foodservice distribution industry for multiple reasons. As a threshold matter, the Court's determination in this case of the Commission's likelihood of success on the merits in the administrative proceeding should include a consideration of the types of evidence the Commission may offer in that proceeding. The 2009 amendments to the FTC's adjudicative rules expressly allow for the admission of declarations and similar evidence to the extent they are "relevant, material, and bears satisfactory indicia of reliability so that its use is fair."  74 Fed. Reg. 1831 (Jan. 13, 2009) (16 C.F.R. pt. 3.43(b)).[7]  Respectfully, when deciding the Commission's likelihood of success on the merits, the Court should not limit itself to a narrower evidentiary record than will be considered at the merits trial.  At best, Defendants' objection goes to the weight that declarations should receive, not their admissibility.

Indeed, consideration of declaration and similar evidence at the preliminary injunction stage is consistent with the normal practice of the federal courts, including this Court.  *See also  Holiday CVS, L.L.C. v. Holder*, 839 F. Supp. 2d 145, 155 (D.D.C. 2012) ("courts generally permit consideration of hearsay evidence in connection with preliminary injunction motions"); *see also Cobell v. Norton*, 391 F.3d 251, 261 (D.C. Cir. 2004) ("A preliminary injunction may be granted based on less formal procedures and on less extensive evidence than in a trial on the merits."); *Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. N.Y. 2010) ("admissibility of

---

[7] On this basis alone, the earlier cases from this Court cited by Plaintiffs are inapposite.

hearsay under the Federal Rules of Evidence goes to weight, not preclusion, at the preliminary injunction stage"); *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (affirming district court's reliance on affidavits in a preliminary injunction proceeding); *United States v. Buddhu*, 2008 U.S. Dist. LEXIS 57728, 2-3 (D. Conn. June 5, 2008) ("In considering a motion for a preliminary injunction, the Court may rely on affidavits, deposition, and sworn testimony, even when they include hearsay").

Even before the 2009 amendments to the FTC's adjudicative rules, this Court considered declarations submitted by the parties in evaluating merger challenges under the preliminary injunction standard of Section 13(b) of the FTC Act.[8]  Most recently, in a recent FTC merger challenge, the Ohio federal court granted a preliminary injunction after considering a range of evidence, including declarations, noting that the "Administrative Law Judge has scheduled over 200 hours . . . for a trial and will have the opportunity to hear live testimony and judge the credibility of witnesses."   *FTC v. ProMedica Health Sys.*, 11-cv-47, 2011 WL 1219281, at *1 (N.D. Ohio Mar. 29, 2011).

Nor are Defendants in any way disadvantaged by this practice here.  Since the merger's announcement in December 2013, Defendants and their counsel have contacted their customers to solicit written support for the proposed merger.  Because Defendants have ongoing business relationships with these potential declarants, they are in at least as good a position as Plaintiffs to obtain declarations and have had more

---

[8] *See, e.g., FTC v. Whole Foods Market, Inc.*, Civ. No. 07-cv-01021-PLF, ¶ 15 (Stipulated Joint Proposed Case Management Order) (D.D.C. 2007)  ("In general hearsay, shall be admitted in this proceeding subject to the Court's determination of the weight to be accorded any document or information").

than ample time to do so.  Plaintiffs do not object to Defendants offering at the preliminary injunction proceeding any declarations obtained by Defendants, either prior to this action or hereafter.  As with the declarations offered by Plaintiffs, the Court should afford them the weight they deserve.

**Defendants' Position:**  Declarations cannot be introduced unless the party against whom they are being introduced has an opportunity to cross-examine the witness. This rule finds ample support in this Court's cases.  *See*, *e.g.*, Dkt. 66, *FTC v. CCC Holdings Inc.*, No. 1:08-cv-02043 (D.D.C. Jan. 30, 2009) (Collyer, J.) ("To the extent that Defendants made a good faith effort to depose any of the FTC's non-testifying witnesses, and were unable to do so, declarations by individuals who did not testify and were not deposed by Defendants will not be admissible"); *FTC v. H.J. Heinz*, Dkt. 7, No. 1:00-cv-01688 (D.D.C. July 19, 2000) (Robertson, J.) ("The parties may offer declarations at the hearing.  Upon objection of the opposing party, such declarations shall not be admitted into evidence until the opposing party has had an opportunity to depose the declarant.").  Further, in cases where, as here, there is inadequate time to depose all of the declarants (the FTC has attached more than 90 declarations to its preliminary injunction motion), courts have required the FTC to identify the subset of declarants they will rely upon and have permitted defendants to depose those declarants.  *See*, *e.g.*, *FTC v. Lab Corp.*, Dkt. 78, No. 8:10-cv-01873 (C.D. Cal. Dec. 29, 2010) (parties were required to identify 15 third-party declarants and provide each other with an opportunity to depose those declarants.).

19. <u>Electronic Service.</u>  Service of all correspondence and formal papers filed, whether under seal or otherwise, shall be by electronic mail.  In the event any documents are

too voluminous for electronic mail, the parties shall serve an electronic disk version of the papers on opposing counsel by hand at their Washington, D.C. office.  The serving Party will telephone the other side's principal designee when the materials are sent to alert them that the materials are being served.  Electronic delivery shall be treated the same as hand delivery for purposes of calculating response times under the Federal Rules.  Service on Plaintiff FTC shall be deemed service on the Plaintiff States.  Plaintiff FTC shall provide copies to the Plaintiff States of any papers served by Defendants.

20. Privilege Logs:  The parties agree to suspend the obligation under Rule 26(b)(5)(A), Fed. R. Civ. P., to produce a log of privileged materials withheld from discovery taken in this action (excluding the Defendants productions made during the course of the FTC's pre-complaint investigation), except for withheld materials in which no attorney is an author, sender, or recipient that are either: 1) authored by, addressed to, or received from any non-party; or 2) internal to a party that are authored by, addressed to, or received from the parties or their attorneys.  The parties shall maintain all documents responsive to a discovery request that are withheld pursuant to a claim of privilege or protection.

21. Answer.  Defendants shall answer the complaint on or before March 5, 2015.

22. Nationwide Service.  The Parties will be allowed nationwide service of discovery and trial subpoenas pursuant to Fed. R. Civ. P. 45 and 15 U.S.C. § 23, to issue from this Court.

S̲CHEDULE̲

| | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| **Plaintiffs' Position:  Exchange of Preliminary Fact Witness Lists** | **March 3, 2015** | |
| **Defendants' Position:  Plaintiffs Serve Preliminary Witness List** | **March 9 (if Defendants' Proposal is adopted)** | **March 3, 2015** |
| **Defendants Serve Preliminary Witness List** | | **March 13, 2015** |
| Defendants File Answer to Complaint | March 5, 2015 | |
| Exchange of Expert Witnesses Lists | **March 9, 2015** | **April 24, 2015** |
| Deadline to Issue Written Discovery to Parties | **March 10, 2015** | **March 19, 2015** |
| Deadline for Service of Third-Party Subpoenas | **March 10, 2015** | **April 22, 2015** |
| Final party and non-party fact witness lists shall be exchanged on or before | April 10, 2015 | |
| **Plaintiffs' Position:  Exchange of Expert Reports** | **March 18, 2015** | |
| **Plaintiffs' Position:  Exchange of Rebuttal Expert Reports** | **March 27, 2015** | |
| **Plaintiffs Serve Expert Witness Reports** | | **April 8, 2015** |
| **Defendants Serve Expert Reports** | | **April 29, 2015** |
| **Plaintiffs Serve Rebuttal Reports** | | **May 8, 2015.** |
| Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction Due | **March 20, 2015** | **May 11, 2015** |
| Close of Fact Discovery | **March 27, 2015** | **April 29, 2015** |
| Close of Expert Depositions | **April 3, 2015** | **May 15, 2015** |
| Plaintiffs' Reply Brief Due | **April 4, 2015** | **May 18, 2015** |
| Parties Exchange Exhibit Lists and Deposition | **April 13, 2015** | **May 18, 2015** |

| Designations | | |
|---|---|---|
| Pre-hearing conference | Date to be set by the Court | |
| Parties Exchange Objections to Exhibits and Deposition  Designations | **April 16, 2015** | **May 22, 2015** |
| Hearing on Plaintiffs' Motion for Preliminary Injunction | **April 21-23, 2015** | **May 28, 2015 - June 10, 2015** |
| Proposed Findings of Fact and Conclusions of Law | **May 3, 2015** | **June 17, 2015** |

Respectfully submitted,


Dated: February 25, 2015                    /s/ Stephen Weissman
                                            (DC Bar # 451063)
                                            Federal Trade Commission
                                            600 Pennsylvania Avenue NW
                                            Washington, D.C. 20580
                                            Telephone:    (202) 326-2030
                                            Facsimile:    (202) 326-2655
                                            sweissman@ftc.gov

                                            Counsel for Plaintiff Federal Trade Commission
                                            (and on behalf of Plaintiff States)


Dated: February 25, 2015                    /s/     Richard G. Parker
                                            (D.C. Bar No. 327544)
                                            Ian Simmons (DC Bar No. 439645)
                                            Edward D. Hassi (admitted pro hac vice)
                                            Katrina Robson (DC bar No. 989341)
                                            O'Melveny & Myers LLP
                                            1625 Eye Street, NW
                                            Washington, DC 20006
                                            Telephone:    (202) 383-5336
                                            Facsimile:    (202) 383-5414
                                            ehassi@omm.com

                                            Counsel for Defendant Sysco Corporation


Dated: February 25, 2015                    /s/ Joseph F. Tringali
                                            (admitted pro hac vice)
                                            Simpson Thacher & Bartlett LLP
                                            425 Lexington Avenue
                                            New York, NY 10017
                                            Telephone:    (212) 455-3840
                                            Facsimile:    (212) 455-2502
                                            jtringali@stblaw.com

Peter C. Thomas, D.C. Bar No. 495928
Simpson Thacher & Bartlett LLP
1155 F Street, N.W.
Washington, D.C. 2004
202-636-5535
pthomas@stblaw.com

Counsel for Defendants USF Holding Corp. and
US Foods, Inc.

Ordered:

_____

Hon. Amit P. Mehta
United States District Judge

Dated: