# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **Federal Trade Commission**, *et al.*,   )<br>   )<br>   Plaintiffs,   )<br>   )<br>   v.   )<br>   )<br>**Sysco Corporation**, *et al.*,   )<br>   )<br>   Defendants.   )<br>   ) | Civil No. 1:15-cv-00256 (APM) |

## MEMORANDUM OPINION AND ORDER

On February 23, 2015, the court entered a Protective Order Governing Confidential Material that places strict limits on who may receive documents designated as "Confidential Material." ECF #25 ("Protective Order"). As presently drawn, the Protective Order does not grant access to Confidential Material to officers and employees of Defendants Sysco Corp. ("Sysco"), USF Holding Corp., and US Foods, Inc. (collectively "US Foods"). *Id.* ¶ 7.

Defendants have moved to modify the Protective Order to permit certain members of their in-house legal teams to have access to Confidential Material.[1] After hearing argument at the status conference held on March 4, 2015, the court ruled that each Defendant may designate up to two members of its in-house legal team to receive access to Confidential Material. Order, ECF #48. As a precondition to access, the designee would have to attest, like the declarant in *F.T.C. v. Whole Foods Market, Inc.*, No. 07-1021, 2007 WL 2059741 (D.D.C. July 6, 2007), that he or she is not involved in the company's "competitive decision-making." *Id.* at *2. On March 6, 2015, Defendants filed the sworn declarations of four in-house lawyers: (1) Russell Libby, Sysco's Chief

---

[1] Defendants first made this request in the parties' Joint Status Report. ECF #29 at 16-17. At the hearing on March 4, 2015, the court stated that it would treat Defendants' request as a motion to modify the Protective Order.

Legal Officer and Executive Vice President of Corporate Affairs; (2) Barrett Flynn, Counsel in Sysco's Litigation Department; (3) Dorothy Capers, Associate General Counsel for US Foods; and (4) Andrew Nelson, former Assistant General Counsel for US Foods, who will serve as an outside litigation consultant.  ECF #56-#59.  All four declarants attested that they do not participate in "competitive decision-making" as described in *Whole Foods*. *Id.*

The court permitted Plaintiffs—the Federal Trade Commission and various States—as well as two third-party interveners—Reinhart Foodservice, L.L.C., and Shamrock Food Company ("Shamrock") (collectively, "Interveners")—to object to Defendants' designations.  Neither Plaintiffs nor Interveners have objected to the designation of Mr. Flynn, Ms. Capers or Mr. Nelson.  The court, therefore, will grant Defendants' motion to modify the Protective Order to permits those three in-house lawyers to access Confidential Material.

As to Mr. Libby, there is a dispute.  It must be said at the outset that the contest about Mr. Libby is not about his integrity or his ethics.  Mr. Libby is an accomplished lawyer and a member in good standing of the Georgia bar.  The court harbors no doubts about Mr. Libby's integrity, ethics or willingness to comply with the Protective Order.  But those considerations alone do not control the inquiry here.  The question under *Whole Foods* is whether a designated in-house lawyer is "positioned to advise the client as to business decisions that the client would make regarding [competitive decision-making]."  2007 WL 2059741, at *2 (citation omitted) (internal quotation marks omitted).  "Competitive decision-making" includes "business decisions that the client would make regarding, for example, pricing, marketing, or design issues when that party granted access has seen how a competitor has made those decisions."  *Id.* (citation omitted) (internal quotation marks omitted); *see also U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984) (stating "competitive decision[-]making" is "shorthand for a counsel's

activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor"). The primary concern underlying the "competitive decision-making" test is not that lawyers involved in such activities will intentionally misuse confidential information; rather, it is the risk that such information will be used or disclosed inadvertently because of the lawyer's role in the client's business decisions. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992); *Carpenter Tech. Corp. v. Armco, Inc.*, 132 F.R.D. 24, 27 (E.D. Pa. 1990).

The court concludes that Mr. Libby is too close to Sysco's competitive decision-making functions to meet the *Whole Foods* standard. As Chief Legal Officer and Executive Vice President for Corporate Affairs, Mr. Libby is a member of Sysco's Executive Team. Libby Decl. ¶ 3. Mr. Libby has candidly acknowledged that issues such as pricing, purchasing, and marketing may be discussed at the Executive Team's weekly meetings. *Id.* Although he does not have final decision-making authority as to those decisions, *id.*, the *Whole Foods* test is not strictly limited to decision-making responsibility; it more broadly encompasses a lawyer's "activities, association, and relationship" with a client and its competitive decision-making activities. *Whole Foods*, 2007 WL 2059741, at *2. Mr. Libby's membership on the Executive Team brings him well within the orbit of Sysco's competitive decision-making activities. Mr. Libby also is chiefly responsible for Sysco's mergers and acquisitions, which involves "evaluation of market competitors as potential acquisition targets." Libby Decl. ¶ 3. Although *Whole Foods* did not specifically identify mergers and acquisitions as falling within the scope of competitive decision-making, the list of competitive activities identified in *Whole Foods* was meant to be illustrative and not exhaustive. Clearly, there

is some risk of inadvertent use or disclosure of a competitor's confidential information when a lawyer's responsibilities include evaluating competitors for potential acquisition.

Although Mr. Libby has not met the *Whole Foods* test, he is still able to assist outside counsel and advise Sysco on litigation strategy. Mr. Libby will have access to redacted final and draft pleadings, expert reports, affidavits, and deposition transcripts, and to discovery not designated as Confidential Material. He will also have access to all of Sysco's records and, if given consent, relevant documents from US Foods. Mr. Libby is not in any way prevented from imparting his personal knowledge of the foodservice industry, Sysco's business operations or the proposed merger to assist outside counsel. The only restriction on Mr. Libby is that he may not access evidence that is designated as Confidential Material. Though this restriction may somewhat diminish Mr. Libby's ability to advise Sysco, the court must strike a balance between Sysco's ability to prepare and present its defense and the interest of third parties in avoiding the inadvertent use or disclosure of their confidential information. *See Brown Bag Software*, 960 F.2d at 1470. The court already has allowed one of Sysco's in-house counsel, Mr. Flynn, to have access to Confidential Material and it will permit a second in-house lawyer to have the same access if he or she satisfies the *Whole Foods* standard. On balance, because of Mr. Libby's close proximity to Sysco's competitive decision-making and because of his business development responsibilities, the risk of inadvertent disclosure of trade secrets outweighs the limited impairment Sysco might experience from Mr. Libby's restricted access to certain discovery.

Interveners have asked the court to limit in-house counsel's access to Confidential Material contained in unredacted draft and final pleadings, deposition and hearing transcripts, and expert reports. ECF #69 at 5, ECF #70 at 7. Under their proposal, in-house counsel would not be able to access discovery material containing Confidential Material. The court will not impose such a

4

restriction. Plaintiffs are federal and state governments who seek to block a merger between two private parties. It would be unfair, in the court's view, for the government to attempt to prevent a private business transaction based, even in part, on evidence that is withheld from the actual Defendants (as distinct from their outside counsel). The court thus will not impose the limitation proposed by Interveners.

Although the court has declined one of Interveners' suggested limits on access, it will accept another. Shamrock has requested that Confidential Material "be made accessible to declarants through a secure electronic data room or document review platform (such as Relativity or Concordia), wherein the declarants would be provided individual login identifications and passwords." Shamrock's Limited Opp. at 5-6. The court will require in-house counsel who are granted access to Confidential Material to review the material either via such a platform or in person at the offices of their outside counsel. Use of such systems will provide additional safeguards to protect against inadvertent disclosure of Confidential Material. The Protective Order shall be revised accordingly.

Finally, the court will modify the Protective Order in two other respects. First, the Protective Order shall be modified to include a clause that requires Defendants to report immediately to the court and to Plaintiffs any confirmed or suspected unauthorized use or disclosure of Confidential Material. Second, a penalty provision shall be incorporated into the Protective Order. Defendants have submitted proposed text for a penalty provision modeled on the one used in *Whole Foods*,[2] which the court has modified to read as follows (the modified text is bolded):

> Any violation of this Order **may** be deemed a contempt and punished by a fine of **up to** $250,000. **Any imposed fine** will be paid individually by the person who

---

[2] The proposed amended Protective Order was emailed to chambers by Sysco's counsel, copying Plaintiffs, on March 6, 2015.

violates this Order.  **A** violator may not seek to be reimbursed or indemnified for the payment the violator has made.  If the violator is an attorney, the court **may recommend to the appropriate professional disciplinary authority that the attorney be sanctioned, suspended or disbarred.**

Based on the foregoing, it is hereby ordered that Defendants' motion to modify the Protective Order is granted in part and denied in part.  The parties shall jointly submit a revised Protective Order that reflects the rulings set forth above.  The revised Protective Order, when signed and entered, shall supersede the Protective Order entered on February 23, 2015.

It is further ordered that Defendant Sysco may file a *Whole Foods* declaration for another in-house lawyer.  Plaintiffs and Interveners shall file any objections no later than three days after such declaration is filed.  Any objection shall be limited to no more than five pages, exclusive of exhibits.

Dated: March 12, 2015

Amit P. Mehta
United States District Judge